May it please the court. My name is Harvey P. Sackett and I represent W.C. Faria, plaintiff appellant in this manner. It's my intention to reserve two minutes for rebuttal. This case involves Faria's claim for Social Security disability insurance benefits. Faria alleged disability based on chronic migraine headaches and depression. The administrative law judge made a is to say both affected her ability to perform basic work activities. Despite this, the ALJ went on to say that even though these were severe impairments, their impact on her ability to work was slight. There are two problems with this. First, the is that they're inherently inconsistent and self-contradictory. Well, if you want to identify the two things, you can, but I want to ask you a question about that. So is this the right time or do you want to identify the second one first? I'll be happy to answer your question at this point, Judge Cliff. The sequence of questions that are required to go through doesn't end with the answer it's severe. I mean, it has to be one of the listed or equivalent to one of the listed conditions. And so I'm not sure that I understand exactly why it is that a condition that's found by the ALJ to be severe inherently means that you couldn't find the condition not to be limiting or the condition's effects to be slight. I mean, there's tension there, no doubt, because ordinarily a severe condition, you would expect a severe impact. But I don't know that it's inherently that way, because the questions line up. It doesn't follow that if you answer a severe question, yes, that's the end of the game. It's not the end of the game. Your question requires several different components to answer. First, in the main, yes, there is a five-step sequential evaluation process. The severe finding was made at step two. At step three, we asked the judge whether it meets or equals a listing. The administrative law judge, because headaches are not a listed impairment, number one said it doesn't meet a listed impairment, and number two, he said it's not equal to what might be a listed impairment. And we're not alleging that it met or equaled a listing. He then went to step four. And at step four, the question is, given the fact that we have a severe impairment, does it preclude the performance of the claimant's past relevant work? And the judge made a two-fold finding. He first said that, no, despite the fact that these were severe impairments, the limitations were slight. And he never really fleshed out what he meant by slight. He said that Ms. Freer could return to her past relevant work. He made an alternate finding and said that, even if I were to conclude that these severe impairments do indeed preclude her from going back to her past relevant work, she nevertheless can do other jobs at step five. Now insofar as slight, my understanding of slight is basically mild or none. The LJ didn't give a definition. He never said, despite the fact that, again, that we have two severe impairments. And severe impairments mean they affect your ability to perform basic work functions. In the physical context, that would mean that it has a significant impact on your ability to sit, stand, walk, and carry. Perhaps the operative word here is significant, as the regulation defines severe. In the context of mental impairments, severe means that it has a significant impact on your ability to use judgment, to relate to coworkers and supervisors, and to carry out and follow instructions. Well, let me try to divide this into pieces. I think, and maybe I misunderstood your first question, actually, I still think that you can have a severe condition that does not preclude employment. You can have somebody who's blind who can still work, a very severe condition. So the question becomes, this particular, or as I view it, is this particular condition so limiting, based on the evidence put before the ALJ, really it's a step four, step five type question. Is this person capable of doing work that's available? And that actually gets to the second point that I was going to make. That being, Your Honor, that her headaches and her depression, as I see this record, did not permit her to perform the tasks that she had done in the past. And I'll leave the step five part to the side for the moment. The record indicates that all the physicians who either treated her or evaluated her, they all said that she suffered from severe migraine headaches. I think the problem is really this, in a nutshell. How do we evaluate chronic headaches? I think the district court clearly got it wrong, and that's what I don't understand. I'm finding a logical, maybe you can find the missing step for me. If it's a severe impairment, it doesn't necessarily mean that it's disabling. Absolutely not. Okay. So what is the next step that the ALJ got wrong? The next step would be, how do her headaches affect her ability to do her past relevant work? Do they permit her to do them, or do they preclude her from doing them? And in this case, the administrative law judge basically said they were slight because there was no objective medical evidence. That's simply not true. In other words, it's his analysis of migraine headaches which led him to say slight. It's his flawed analysis of migraine headaches that said she could return to her past relevant work. She showed the classic signs of migraine headaches. The ALJ didn't acknowledge these, neither did the district court. Let me just ask you one question. Was there a treating physician here? She was treated at Kaiser, and there were several people there who did treat her. Yes. And one of her physicians who had treated her, Dr. Ellis, said that she was unable to work because of the migraine headaches. That's on pages 122 and 123 of the excerpts. Does she have continual migraine headaches or ‑‑ which are severe, migraine headaches are severe. I would agree with that. But usually, people who have migraine headaches have them every now and then. That's her situation. Judge Hager, excuse me, Your Honor. There's no indication in this record that she ever had a break from the migraine headaches.  Yes, there is, Your Honor. This entire record shows repeated references and diagnoses by the treating and consulting physicians. No, I understand that. But what I want ‑‑ well, maybe you're about to say that the doctors say it's continual? I didn't see that. If I understand your question, Your Honor, if you're asking me whether the prognosis was that they would continue, I don't believe that ‑‑ Every day. Well, I don't mean to sound coy. They obviously didn't see her every day. Her recital, her testimony ‑‑ Yeah, but they take a history and they'd have other reasons for it. She said that she had them every day, Judge Hugg. Yes, yes. Judge Short, I want to get back to your question. I think the problem is how the administrative law judge and the district court evaluated headaches. They were looking for something along the lines of an MRI. They wanted some litmus test to say, voila, we did this test, this corroborates the presence of migraine headaches, much like we might do with a blocked artery in a heart, much like we might do with a herniated disc with a back. Wasn't there some kind of credibility determination here as to her credibility as to the extent of the disability? There was. And that both is represented in opposing counsel's briefing by district court was inaccurate. There was a psychological test done, an MMPI, and one of the possible, and that's the operative word here, one of the possible interpretations was malingering. It was only one possibility. The state agency psychologist who saw her said, in fact, he felt that she did her best and that he saw no malingering. The ALJ also misstated her daily activities. He said she was taking only one medication. She was, in fact, taking three. He said she cooked all the meals. She said she cooked frozen food twice a week. He said that she took her children to the movies, she put a video in, and she went and she would go and lie down. So I don't think the credibility assessment was valid. Okay. You've just about used your time. We'll give you a minute on rebuttal. Thank you, Your Honor. Good morning. I'm Jacqueline Forslund, appearing on behalf of the appellee, the commissioner. This is a case where there's actually very little evidence on the record that claimant had any significantly limiting impairment. The ALJ nonetheless found that she had severe headaches and depression. In this case, it's distinguishable from Ortega cited, which is an out-of-circuit case, cited by claimant. Because in that case, the ALJ discredited a treating physician's opinion as to the existence and severity of headaches. In this case, there is no such treating physician opinion. In fact, her neurologist to whom she was referred by her treating physician, because he could ascertain no cause, couldn't find a subjective or clinical findings. It was because she had been given a multitude of medications. She'd been given migraine medications. She'd been given painkillers. She'd been given an antidepressant that's normally prescribed for headaches as well as depression. She was given a beta blocker and an ACE inhibitor. Nothing had any impact on her symptoms. I guess I find this odd. There is a finding that she had severe headaches. The evidence appears to be that she had them on a daily basis, which is pretty bad. The ALJ accepted the fact that she had severe headaches and yet said, but she's not disabled. And I have never quite, I've seen cases, lots of cases where we don't believe she has severe headaches. She has severe pain because there's no objective medical findings to support it, and we've said that's no good. But I've never, I can't remember a case where the ALJ said, yes, she does have these, but it's not disabling because we can't find the objective medical findings. And we've also, our law seems to be clear that you can have disabling pain. So what do we do here? First I'd like to clear up the residual functional capacity finding. The ALJ did not find the claimant was disabled, but did find that her ability to perform the full range of light work was slightly diminished due to headaches. That means in addition to being limited to light work, it was, she was more limited based on her headaches. The finding of light work, the only support for that in the record is the state agency physician's opinion, who limited her to light work because of her headaches. So that's the residual functional capacity finding. Now, the neurologist referred her to psychotherapy because he couldn't find any cause for the headaches that were not diminished by any sort of treatment. But the ‑‑ So found that there were no headaches? The neurologist didn't say there were no headaches. He just could not find a cause. And the ALJ acknowledged there were headaches. This is a very difficult case, because even though ‑‑ It is. And I agree with Judge Schroeder, where we have a finding of the ALJ that she had severe headaches. It must be based on some, either on her statements or on some medical examination. And you say that the medical examination doesn't support that, so he must have believed her. Yes, the ALJ is not doubting. He acknowledged that she has severe headaches, which by definition, if they're severe, they're because of her statements. She had them daily. Well, that would be based on her, the credibility of her testimony. In this case, the ALJ gave ‑‑ But he's relying on her testimony that she had severe headaches. I mean, that's the only testimony that he's relying on, I think. Well, the ALJ gave Klain a lot of benefit of the doubt in this case in finding that she had two severe impairments that limited her to a range of light work. Or you could turn it around and say he, having made all the requisite findings, he then wrongly denied her the benefits. But in this case, there is no evidence, medical evidence, that she's more limited. The state agency, there's no treating physician opinion. She was referred to psychotherapy. Only the ALJ's opinion. Pardon? The only opinion we are dealing with is the ALJ's opinion. Actually, the state agency physician did find, in looking at the evidence, that Klain was limited to light work because of her headaches. And the ALJ found that Klain's depression limitations were mild and could have found it non-severe, but did include this in his analysis. As to the credibility findings, the ALJ made three. There is no requirement, as claimant suggests, that he address all the factors in the regulations. In fact, there's no Ninth Circuit case to that effect. In fact, Ortega v. Shalala, which is cited in our brief, in that case, there were only three credibility findings, which are very similar to the credibility findings that the ALJ considered objective evidence, daily activities, and medications, which is very similar to this case. And the court in Ortega, this court, found that that was, those findings were sufficiently specific to show that the ALJ did not arbitrarily discredit Klain's testimony. And Klain did have a certain burden in this case to come forward with medical evidence to show that she was disabled in her disability. Her treatment records don't support her claims of disability. Her activities don't. The minimal medications that she was taking, by the time of the hearing, she was taking less than a minimum dosage of an antidepressant, which indicates that her psychotherapists didn't think that she was significantly impaired. Are there any more questions? What is the ALJ's finding that you're relying on? On which level of the analysis, Your Honor? Well, on the level that's before us. The ALJ found that she could perform light work, and that was based on the State Agency Physician's opinion. And he rejected her credibility and gave three reasons, showing that he did not arbitrarily reject her testimony. So the credibility that he didn't rely on, that he thought could not be relied on was what? Most telling was the minimum treatment that she was being given. Less than minimal dosages of antidepressants. Also, her activities. She was responsible for the care of a young child, and the whole universe of activities that's involved in that. What is it that he doesn't believe? See, this is what I don't. He believes that she's got severe headaches every day, and yet he says she doesn't have severe headaches every day because she can do all these other things. He believed her headaches were significantly limiting, which is the definition of severe, but it's a leap to conclude that these step two findings compels a conclusion that she was disabled. The State Agency Physician reviewed all of the evidence and found that her headaches limited her to light work. I thought you said that the State Agency really didn't think she had very bad headaches. He was assessing her headaches. Yes. And found that she was limited to performing light work. All right. Where's that? Can you just point me to that in the record? The ALJ cites the State Agency Physician's opinion. I believe that's on page 13 of the decision. Where's the opinion? The opinion, if I can find it. Here we go. It's on page, starts on page 118 in the transcript. That's the administrative transcript. Those numbers are in the excerpts of record also in the upper right-hand. Saying that the State Agency Physician was, the primary diagnosis was mixed headaches. And the State Agency Physician, based on that diagnosis and the evidence in the record, limited her to performing light work. This is what page on the upper right-hand corner? Page 118. That's a Kaiser Permanente. This is the page in the administrative transcript, Your Honor. There are two numbers on the upper right-hand, and the larger number is the number for the administrative transcript. What was the page again? Pardon? What page? Page 118 of the administrative transcript. Yes, Your Honor. I can't read that. You've more than used your time, I think. Are there any further questions? No, Your Honor, we just respectfully request that the Commissioner's final decision be affirmed. Thank you. Your Honor, supposing counsel, again, misstated the record when she stated that there was no opinion from a treating physician that Ms. Furrier was disabled. As I noted initially, that's simply not true. On page 123 of the excerpts of record, Dr. Ellis stated that she was unable to work because of her chronic migraine headaches. This was a treating neurologist, Judge Schroeder. Point number two, opposing counsel correctly states that the ALJ does not have to go through each and every factor to assess credibility. However, this Court's clearly said they have to do it accurately. Again, as I noted before, the ALJ wrongly stated that Ms. Furrier was only taking one medication at the time of the hearing. She testified, and this is on page 294 of the transcript, she was taking three medications. Finally, the ALJ made a hearing decision de novo. He wasn't bound by the DDS or the state agency determination. Unless the panel has any other questions. I'm sorry, where is the neurologist? This is page 123 of the excerpts of record. That's a note from Dr. Ellis, her treating neurologist. He saw her on April 26, 2000. The VISTA starts on page 122 of the excerpts and carries over to 123. It's in the middle of the page where he said she was unable to work. Okay. Thank you. Thank you, Your Honors. The case just argued is submitted for decision. We'll hear the next case, which is Levine v. City of Alameda.
judges: Hug, Schroeder, Clifton